NORTHERN PAC. RY. CO. v. SODERBERG.

(Circuit Court, D. Washington, N. D. February 9, 1900.)

PUBLIC LANDS—GRANTS IN AID OF RAILROAD—RESERVATION OF MINERAL LANDS—BUILDING STONE.

Land which is chiefly valuable for the building stone which it contains is reserved from the grant to the Northern Pacific Railroad Company (Act Cong. July 2, 1864; 13 Stat. 365), because the granting act reserves all mineral lands, except iron and coal. The word "mineral" is not synonymous with "metal," but in its general definition includes every variety of stone and rock. The granting act does not indicate an intention on the part of congress to restrict the meaning of the word "mineral," and in subsequent statutes stone lands are classed as mineral lands.

In Equity.

Suit in equity for an injunction, and to determine adverse claims of title to part of an odd-numbered section of land situated in the state of Washington, and within 40 miles from the completed part of the line of the Northern Pacific Railroad; the Northern Pacific Railway Company, successor of the Northern Pacific Railroad Company, claiming the same as a part of the land granted by the act of congress of July 2, 1864, to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound (13 Stat. 365), and the defendant, J. A. Soderberg, who, when the suit was commenced, was in possession of said land, and engaged in quarrying and disposing of merchantable granite, claiming title to the land, and a right to remove stone therefrom, under proceedings commenced by him to acquire the title from the United States as a placer mining claim, pursuant to the act of congress of August 4, 1892, entitled "An act to authorize the entry of lands chiefly valuable for building stone under the placer mining laws" (2 Supp. Rev. St. U. S. p. 65). Decree for defendant.

H. M. Stephens, for complainant.
Ballinger, Ronald & Battle, for defendant.

HANFORD, District Judge. The land which is the subject of this suit contains a large and valuable ledge of granite. It is situated in the Cascade Mountains, and is apparently of no value except for the granite. There is no controversy between the parties as to any material fact, and their rights with respect to the land depend entirely upon the determination of the question whether granite is a "mineral," within the definition of that word as it is used in the act of congress granting lands to aid in the construction of the Northern Pacific Railroad. The defendant has perfected his right to the land, if a title can be lawfully acquired to part of an odd-numbered section which is valuable chiefly for stone, and situated within the limits of the Northern Pacific Railroad Company's grant. The land department has decided the question in favor of the defendant, and issued a patent to him. In the month of April, 1895,

this court, at a term held at Spokane, decided the question the other way in the case of Northern Pacific Railroad Company v. Stanton. At that time the court did not have an opportunity to study the question as thoroughly as it appears to have been studied by the counsel who have argued this case. No opinion was prepared, and the considerations upon which the decision was based have not been publicly set forth. Therefore, to justify a departure from precedent, it is proper at this time to say the court then considered that the act of congress of June 3, 1878, authorizing the sale of lands chiefly valuable for stone, on the same terms as timber lands (1 Supp. Rev. St. U. S. [2d Ed.] p. 167), and the act of August 4, 1892, authorizing the entry of lands chiefly valuable for building stone under the placer mining laws (2 Supp. Rev. St. U. S. p. 65), placed stone lands in a class separate and distinct from other mineral lands, and justified an inference that the word "mineral," as used in prior acts, was understood and intended by the legislative branch of the government as having a limited definition including only metalliferous minerals. The second section of the act of 1892 extends the act of 1878 to all the public land states, so there can be no presumption that it repeals the act of 1878 by implication. The court, as then informed, supposed that its decision in the Stanton Case was in harmony with the rule at that time prevailing in the land department. See Conlin v. Kelly, 12 Land Dec. Dep. Int. 1; Clark v. Ervin, 16 Land Dec. Dep. Int. 122; Hayden v. Jamison, Id. 537; South Dakota v. Vermont Stone Co., Id. 263; Florence v. Delaney, 17 Land Dec. Dep. Int. 120; Tucker v. Navigation Co., 19 Land Dec. Dep. Int. 414. In the presentation of this case the attorneys on both sides have made oral and written arguments supporting their respective contentions with great force and much learning, and, after considering the same with deliberation, I am fairly convinced that the reasons controlling the decision in the Stanton Case are insufficient, and it appears, also, that the practice in the land department is now governed by a different rule, as shown by the action of the department in issuing a patent to the defendant for the land which is the subject of controversy in this case. In its common and ordinary signification the word "mineral" is not a synonym for "metal," but is a comprehensive term, including every description of stone and rock deposits whether containing metallic substances or entirely nonmetallic. Congress having chosen a word of such broad significance to define the class of lands reserved from the grant to the Northern Pacific Railroad, the courts and the land department have no authority to construe the act, giving a narrow or limited definition to the word, in order to enhance the value of the grant, and to diminish the rights of the general public in the lands reserved, unless the act itself, or other acts of congress, prescribe conditions which require an interpretation of the statute allowing the word to have force only in a restricted sense. The granting act itself does not expressly or by implication so prescribe, otherwise than by making an exception of coal and iron. Looking, then, for other acts of congress, which might be regarded as giving a legislative construction to the granting act, I find only one which indicates a purpose

to give a legislative definition to the word "mineral," as it is there used; that is, the act of February 26, 1895, to provide for the exam-- ination and classification of certain mineral lands in the states of Montana and Idaho (2 Supp. Rev. St. U. S. p. 385). This statute pro- vides for a commission to examine and classify the odd-numbered sections of land within the limits of the Northern Pacific Company's grant in the states of Montana and Idaho, and the third section reads as follows:

'. "That all said lands shall be classified as mineral which by reason of valu- able mineral deposits are open to exploration, occupation, and purchase under the provisions of the United States mining laws. and the commissioners in making the classification hereinafter provided for shall take into consideration the mineral discovered or developed on or adjacent to such land, and the geo- logical formation of all lands to be examined and classified, or the lands adja- cent thereto, and the reasonable probability of such land containing valuable mineral deposits because of its said formation, location, or character; * * * provided, that the word 'mineral,' where it appears in this act, shall not be held to include iron or coal."

· If congress had intended by this act to interpret the reservation clause of the granting act so as to give a restricted definition to the word "mineral," there is no good reason why it should not have directed that only lands valuable for the metalliferous minerals therein should be classified as mineral lands; and it is significant that, instead of prescribing any such limited rule, the words of the act correspond with the words in the grant expressing the purpose to reserve all minerals, the test being, not the nature or quality of the mineral, but its value; and lands containing any mineral de- posits of sufficient value to be subject to sale by the government un- der the provisions of the United States mining laws are required to be classified so as to come within the class of lands which are reserved. This statute must be understood as referring to the United States mining laws in force at the time of its enactment, including the act of August 4, 1892, by which lands "that are chiefly valu- able for building stone" were made subject to entry under the pro- visions of the law in relation to placer mineral claims. It may be conceded that congress could not, after the granted lands had been earned, by any form of enactment withdraw any part not in fact originally reserved, and the court is not at all inclined to give any such effect to the act of 1895. But the complainant in this case contends for an interpretation of the granting act in accordance with a supposed particular legislative intent, which is not expressed by the words of the statute according to the definitions found in the dictionaries, and in prosecuting an inquiry as to the intent of the legislature it is not improper to give due consideration and weight to the repeated and harmonious expressions found in the statutes. It is not to be presumed that the intention or purpose of congress with respect to what lands should be granted and what reserved was changed between the time of making the grant and the enactment of the law providing for the classification of the lands within the limits of the grant in the states of Montana and Idaho, when no such change of intention or purpose is declared. On the other hand, it is fair to presume that the intention of congress was

the same with respect to mineral lands reserved from the grant in other states that is expressly declared with reference to lands in Montana and Idaho.

On the part of the complainant it has been argued that prior to August 4, 1892, lands valuable for the deposits of stone contained therein were not regarded by congress as mineral lands, else congress would not have enacted the law of June 3, 1878, providing for the sale of such lands on the same terms as timber lands, nor have enacted a law specially providing for the entry of lands chiefly valuable for building stone under the laws providing for the disposition of placer mineral lands, and it must be admitted that this argument is supported by the decision of the circuit court of appeals for the Ninth circuit in the case of McFadden v. Milling Co., 97 Fed. 670. I should not feel at liberty to disregard a decision of the appellate court if the case under consideration necessarily had to turn upon the same point, but while it is true that the act of 1892 only prescribes a rule for the future, and therefore may not be treated as being declaratory of the previously existing law, still it does not follow as a logical deduction that lands chiefly valuable for the ledges and deposits of stone therein had been theretofore considered by congress as nonmineral. If a new statute should be passed, providing a particular method of acquiring title to lands containing valuable deposits of nickel or zinc, and also providing that the same character of lands may be entered under the general mining laws of the United States, thus giving to purchasers an option to acquire the title by either method, it would be just as reasonable to say that by implication the new law had added something to the list of recognized minerals as to suppose that the act of 1892 had the effect to place stone for the first time in the list of minerals. On the part of the defendant an argument has been made that, because there was apparent confusion in the practice of the land department, growing out of contradictory rulings with reference to stone lands, the act of 1892 was intended to avoid the consequences of certain decisions which class stone as nonmineral, and therefore it must be inferred that the act was intended to restore stone lands to the classification of mineral lands, in harmony with the general policy of the government. I do not rest my decision upon that inference. I hold that it does not clearly appear from all or any declarations of the legislative will that the word "mineral" in the grant to the Northern Pacific Railroad was there used in a restricted sense, and the rules for construing statutes making grants require that effect be given to the whole act, including the reservation clause, according to the common and general definition of the words selected by congress. Decree for the defendant.